JASON EDWARD WAX (WSBA #41944)
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101
Tel: (206) 292-2110
Facsimile: (206) 292-2104
Email: jwax@bskd.com

MEAGHAN E. MURPHY (admitted *Pro Hac Vice*)
SHIRA A. BARATZ (admitted *Pro Hac Vice*)
MELAND BUDWICK, PA
3200 Southeast Financial Center
200 South Biscayne Blvd.
Miami, Florida 33131
Tel: (305) 358-6363
Emails: mmurphy@melandbudwick.com
sbaratz@melandbudwick.com

*Attorneys for the Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| In re<br><br>ICAP ENTERPRISES INC., *et al.*<br><br>Debtors. | Lead Case No.: 23-01243-WLH11<br>Jointly Administered |
| Lance Miller and Seth Freeman as Co-Trustees of the iCap Trust,<br><br>Plaintiffs,<br><br>v.<br><br>Fuxu Liang, an individual,<br><br>Defendant. | Adv. Pro. No.:<br><br><br>**ADVERSARY COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS** |

1

COMPLAINT

Lance Miller and Seth Freeman (the "**Trustees**" or "**Plaintiffs**"), acting in their capacities as Co-Trustees of the iCap Trust (the "**Trust**"), hereby allege the following claims against Fuxu Liang, individually (the "**Defendant**"). Plaintiffs allege the following upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys and upon their own investigation made by and through their advisors and experts.

## PRELIMINARY STATEMENT

1. Beginning as early as 2013 and continuing until July 2023, two brothers, Chris Christensen and Jim Christensen (the "**Christensens**"), founded and operated the iCap Entities[1] as a Ponzi scheme, stealing or otherwise squandering approximately $230 million obtained from over 1,800 investors in the United States and abroad (the "**Investors**"). The Christensens used the iCap Entities to induce the Investors to invest in private offerings of securities based on false and misleading assurances about the security of the investments.

2. The iCap Entities were operated as, and had all the hallmarks of, a Ponzi scheme. Funds received from new Investors in the iCap Entities, and intercompany

---

[1] The iCap entities – purportedly operating a legitimate real estate investment business – which were used by the Christensens to conduct their Ponzi scheme include: iCap Enterprises, Inc.; iCap Pacific NW Management, LLC; iCap Vault Management, LLC; iCap Vault, LLC; iCap Vault 1, LLC; Vault Holding 1, LLC; iCap Investments, LLC; iCap Pacific Northwest Opportunity and Income Fund, LLC; iCap Equity, LLC; iCap Pacific Income 4 Fund, LLC; iCap Pacific Income 5 Fund, LLC; iCap Northwest Opportunity Fund, LLC; 725 Broadway, LLC; Senza Kenmore, LLC; iCap Campbell Way, LLC; UW 17th Ave, LLC; VH Willows Townhomes LLC; iCap @ UW, LLC; VH 2nd Street Office, LLC; VH Pioneer Village LLC; iCap Funding LLC; iCap Management LLC; iCap Realty, LLC; Vault Holding, LLC; iCap Pacific Development LLC; iCap Holding LLC; iCap Holding 5 LLC; iCap Holding 6 LLC; Colpitts Sunset, LLC; CS2 Real Estate Development LLC; and iCap International Investments, LLC (collectively referred to herein as the "**iCap Entities**" or the "**Debtors**").

2

COMPLAINT

transfers, were used to make payments to existing Investors; the iCap Entities' real estate business provided little or inadequate return on investment; and new investments and intercompany transfers were used to compensate and serve as a source of purported loans to Chris Christensen, which amounts were never paid back. The iCap Entities were a fraudulent enterprise.

3. On October 9, 2024, the Debtors, jointly with the Official Committee of Unsecured Creditors, filed the *Second Modified Second Amended Joint Chapter 11 Plan of Liquidation of iCap Enterprises, Inc. and its Affiliated Debtors Proposed by the Debtors and Official Committee of Unsecured Creditors* [Main Case ECF 1360] (the "**Plan**"). On October 18, 2024, the Bankruptcy Court entered its Order confirming the Plan [Main Case ECF 1414] (the "**Confirmation Order**"). As part of its Confirmation Order, this court found that the Debtors operated as a Ponzi scheme beginning no later than October 2018 through July 2023 (the date range for which evidence was provided in connection with confirmation of the Plan). The scheme, however, commenced well prior to that time.

4. Consistent with the authority vested in them by the Plan, Confirmation Order, and the iCap Trust Agreement dated November 13, 2024 (the "**Trust Agreement**"), by this Complaint, the Trustees seek the avoidance and recovery of fraudulent transfers.

## **PARTIES**

5. The Plaintiffs are Lance Miller and Seth Freeman, solely in their capacities as the Co-Trustees of the Trust, which was formed in accordance with the

COMPLAINT

terms of the Trust Agreement and the Plan. The Plaintiffs are both citizens of California.

6. Pursuant to the Plan and the Trust Agreement, the Trust was established to, among other things, pursue Avoidance Actions as iCap Trust Actions. *See, e.g.,* Confirmation Order, ¶ 107; Plan, Article III.C.

7. Defendant is an individual who, in addition to investing their own capital, marketed the investment to other third parties and, in exchange, received commissions from the iCap Entities.

## JURISDICTION

8. The Bankruptcy Court has jurisdiction over this case and this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (H) and (O). Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409.

9. The Plaintiffs consent to the entry of final orders and judgments by the Bankruptcy Court.

## FACTUAL ALLEGATIONS

### A. History of the iCap Entities

10. iCap Enterprises, Inc. was formed on August 9, 2007. iCap Equity, LLC, its direct subsidiary, was formed on August 15, 2011. Chris Christensen was the founder and Chief Executive Officer of these entities. Chris Christensen was also the sole shareholder of iCap Enterprises, Inc. He and his wife were also the sole members of iCap Investments, LLC. Jim Christensen was the Chief Operating Officer of these entities. The iCap Entities were all directly or indirectly owned by

4

COMPLAINT

Chris Christensen, and he decided which entities to form and the purpose each would serve.

11. Over the course of the next 12 years (from 2011 to 2023), in furtherance of the Ponzi scheme, various other iCap Entities were formed or operated as specific investment vehicles to accommodate the solicitation of private investments in purported real estate opportunities in the Pacific Northwest. The iCap Entities experienced rapid growth and ultimately employed more than 35 people at their Bellevue, Washington headquarters by early 2023.

12. The iCap Entities were used to invest in two categories of real estate, across two divisions of operations known as the "Portfolio Business" and the "Vault Business."

13. The Portfolio Business was the oldest of the iCap business lines. It operated under iCap Equity, LLC and various subsidiaries. The Portfolio Business purportedly focused on development opportunities for multifamily real estate projects. In some cases, these projects started with raw and undeveloped land, and in other cases the projects began with building permits in place or the improvement of existing structures. The Portfolio Business was funded through private placements of debentures and promissory notes under which Investors were promised interest rates ranging from 6% to 15%. These returns were never realized.

14. The Vault Business was started in 2018 for the ostensible purpose of investing in standalone real estate investments that had the potential to be or already were cash flow positive. The Vault Business operated under iCap Vault, LLC and

COMPLAINT

various subsidiaries. The Vault Business financed its operations through private placement notes and public demand notes.

15. The Portfolio Business and Vault Business investments provided little or inadequate return on investment. New investments and intercompany transfers were largely used to pay pre-existing Investors to simulate a return. In addition, new investments and intercompany transfers were used as the source of compensation and purported loans to Chris Christensen, which were transferred into his personal accounts and were never paid back.

16. The iCap Entities and their various investment vehicles (the "**Funds**") were structured to afford complete discretion to Chris Christensen and the iCap fund managers with respect to the specific types of real estate in which Investor funds would be placed, the timing for all such investments, the security afforded to each investment, the decisions regarding when each parcel would be sold, and how each would be appraised and priced for sale.

17. On September 28, 2023, as the Ponzi scheme finally collapsed, Chris Christensen resigned all the positions he held with the iCap Entities. His brother, Jim Christensen, had previously resigned his positions with the iCap Entities.

**B. <u>The iCap Entities' Operations Bore All The Hallmarks of a Ponzi Scheme</u>**

18. The iCap Entities' business operations had all the hallmarks of a classic Ponzi scheme, including but not limited to:

a. The majority of funds deposited by the iCap Entities into their bank accounts came from Investors, intercompany transfers, and external lenders, rather than being generated through business operations;

6

COMPLAINT

b. Approximately 95% of the cash deposited with the investment entities (those iCap Entities in which Investors directly invested) was sourced either from Investors or from other iCap Entities;

c. Withdrawals from the iCap Entities' accounts were not used to fund investments as represented to Investors. Rather, the majority of withdrawals were paid out as returns to Investors and intercompany transfers;

d. Thus, similar to the deposits, withdrawals from the iCap Entities' bank accounts were largely comprised of money paid to Investors and intercompany transfers, with only a small percentage of the withdrawn amounts going toward real estate investment activities and business operations;

e. The iCap Entities' real estate business operations produced little earnings. From September 2013 through December 2020, the iCap Entities generated a paltry net gain of approximately 1.3% from sales and operations on $103.4 million in real estate investments;

f. The iCap Entities' revenue from business operations was insufficient to make the payments to Investors. The iCap Entities' only other sources of funds were third-party loans and Investors' money;

g. The books and records evidence substantial intercompany transfers and commingling of funds. Intercompany transfers accounted for a

7

COMPLAINT

significant portion of the iCap Entities' overall cash activity, and there was a commingling of funds, resulting in a single, pooled fund that made it impossible to trace specific funds;

h. The iCap Entities' books and records also show that their Funds promised consistent high returns to Investors while failing to generate enough profits to service the promised payments;

i. The iCap Entities' investment strategy for its Portfolio Business did not align with the terms of the debt instruments they issued to raise capital from Investors. Almost all the debentures and promissory notes issued by the Funds offered the option of monthly interest payments to Investors immediately after the closing of the applicable loan. Because the Funds primarily invested in new real estate developments, the representation that the iCap Entities could begin generating near-immediate returns on such real estate was unrealistic and misleading;

j. In total, the iCap Entities invested approximately $103 million in real estate projects from 2013 to 2022 across its Portfolio Business and received approximately $104.4 million upon exiting the projects, an astonishingly low net return of only $1.4 million over a 9-year period. This extremely low return demonstrates that the iCap Entities would not have been able to pay off the Investors from the appreciation in the real estate investments and chose instead to use funds raised from other Investors to make such payments;

8

COMPLAINT

k. iCap also failed to invest Investors' funds in promised investments and later Investors received lower returns than those received by earlier Investors; and

l. By 2021, in an offering memorandum, the iCap Entities had admitted that its entities had been operating with negative cash flows since inception.

**C. As the Ponzi Scheme Collapses, the iCap Entities Seek Bankruptcy Protection**

19. On September 29, 2023 (the "**Petition Date**"), the iCap Entities filed chapter 11 cases in the United States Bankruptcy Court for the Eastern District of Washington (the "**Bankruptcy Court**"), Case No. 23-01243-WLH11. On October 9, 2024, the Debtors, jointly with the Official Committee of Unsecured Creditors, filed the Plan. On October 18, 2024, the Bankruptcy Court entered the Confirmation Order.

20. As part of the Confirmation Order, the Bankruptcy Court found that the iCap Entities operated as a Ponzi scheme beginning by no later than October 2018 through July 2023 (the "**Ponzi Period**") (the date range for which evidence was provided of the Ponzi scheme operation in connection with confirmation of the Plan). *See* Confirmation Order ¶¶ 17, 74, 77.

COMPLAINT

## D.    The Transfers and the Defendant

21.    The Defendant is an individual who, in addition to investing their own capital, marketed the investment to other third parties and, in exchange, received commissions from the iCap Entities.

22.    Prior to the Petition Date, the iCap Entities made each of the transfers reflected in **Exhibit 1** ("**Transfers**").

23.    Each of the Transfers was to or for the benefit of the Defendant.

24.    The Transfers were made in furtherance of and related to the Ponzi Scheme.

## E.    Triggering Creditor

25.    There was and is at least one creditor of the iCap Entities in existence at the time of the Transfers who held at all material times an unsecured claim that was and is allowable under Bankruptcy Code § 502.

26.    The Internal Revenue Service is a creditor, which is not bound by state statutes of limitation.

**COUNT I**
**Actual Fraudulent Transfer**
**11 U.S.C. § 548(a)(1)(A)**

27.    The Trustees re-allege paragraphs 1 through 26 as though fully stated herein.

28.    Certain of the Transfers were made within two years of the Petition Date (the "**Two-Year Transfers**"). The Two-Year Transfers are reflected in **Exhibit 2**.

10

COMPLAINT

29. The iCap Entities reflected in Exhibit 2 made the Two-Year Transfers in furtherance of and related to the iCap Ponzi Scheme.

30. The iCap Entities reflected in Exhibit 2 made the Two-Year Transfers with the actual intent to hinder, delay, or defraud their creditors.

31. The Trustees are entitled to avoid the Transfers pursuant to 11 U.S.C. §548(a)(1)(A).

**COUNT II**
**Constructive Fraudulent Transfer**
**11 U.S.C. § 548(a)(1)(B)**

32. The Trustees re-allege paragraphs 1 through 26 as though fully stated herein.

33. The iCap Entities reflected in Exhibit 2 made each of the Two-Year Transfers within two years of the Petition Date.

34. The Two-Year Transfers were made (a) without the iCap Entities reflected in Exhibit 2 receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the iCap Entities reflected in Exhibit 2 were insolvent or as a result of which the iCap Entities reflected in Exhibit 2 became insolvent; or (ii) at a time that the iCap Entities reflected in Exhibit 2 were engaged in a business or a transaction, or about to engage in a business or a transaction, for which any property remaining with the iCap Entities reflected in Exhibit 2 was an unreasonably small capital; or (iii) at a time when the iCap Entities reflected in Exhibit 2 would incur debts that would be beyond their ability to pay as such debts matured.

35. The Trustees are entitled to avoid the Transfers pursuant to 11 U.S.C. §548(a)(1)(B).

11

COMPLAINT

## COUNT III
## Actual Fraudulent Transfer
### 11 U.S.C. § 544 and Revised Code of Washington §§ 19.40.041(1)(a), 19.40.071, or other applicable state law

36. The Trustees re-allege paragraphs 1 through 26 as though fully stated herein.

37. The iCap Entities reflected in Exhibit 1 made each of the Transfers in furtherance of and related to the iCap Ponzi Scheme.

38. The iCap Entities reflected in Exhibit 1 made the Transfers with the actual intent to hinder, delay, or defraud their creditors.

39. The Trustees are entitled to avoid the Transfers pursuant to 11 U.S.C. §544 and the Revised Code of Washington §§ 19.40.041(1)(a) and 19.40.071, or other applicable state law.

## COUNT IV
## Constructive Fraudulent Transfer
### 11 U.S.C. § 544 and Revised Code of Washington §§ 19.40.041(1)(b), 19.40.051, 19.40.071, or other applicable state law

40. The Trustees re-allege paragraphs 1 through 26 as though fully stated herein.

41. The iCap Entities reflected in in Exhibit 1 made each of the Transfers to the Defendant.

42. The Transfers were made (a) without the iCap Entities reflected in Exhibit 1 receiving a reasonably equivalent value in exchange for such transfer; and (i) at a time when the iCap Entities reflected in Exhibit 1 were insolvent or as a result of which the iCap Entities reflected in Exhibit 1 became insolvent; or (ii) at a time that the iCap Entities reflected in Exhibit 1 were engaged in a business or a

12

COMPLAINT

transaction, or about to engage in a business or a transaction, for which any property remaining with the iCap Entities reflected in Exhibit 1 was an unreasonably small capital; or (iii) at a time when the iCap Entities reflected in Exhibit 1 would incur debts that would be beyond their ability to pay as such debts matured.

43. The Trustees are entitled to avoid the Transfers pursuant to 11 U.S.C. §544 and the Revised Code of Washington §§ 19.40.041(1)(b) or 19.40.051 and 19.40.071.

## COUNT IV
### 11.S.C. § 550(a) and Revised Code of Washington § 19.40.081(2)

44. The Trustees re-allege paragraphs 1 through 26 as though fully stated herein.

45. The Defendant is the initial transferee of the Transfers. Alternatively, the Defendant is the party for whose benefit each Transfer was made. Therefore, once avoided, the Trustees may recover the Transfers from the Defendant.

**WHEREFORE**, the Trustees pray for and demand order and judgment against the Defendant as follows:

(1) Count I: Avoiding the Two-Year Transfers under 11 U.S.C. § 548(a)(1);

(2) Count II: Avoiding the Two-Year Transfers under 11 U.S.C. § 548(a)(1)(B);

(3) Count III: Avoiding the Transfers under 11 U.S.C. § 544 and the Revised Code of Washington §§ 19.40.041(1)(b) or 19.40.051 and 19.40.071;

(4) Count IV: Recovery of the Transfers under 11 U.S.C. § 550(a) and the Revised Code of Washington § 19.40.081.

In addition, the Trustees request from the court any such other and further relief, equitable or otherwise, that this court deems just and proper.

13

COMPLAINT

DATED: September 26, 2025  BUSH KORNFELD LLP

/s/ Jason Edward Wax
JASON EDWARD WAX (WSBA #41944)
BUSH KORNFELD LLP

MEAGHAN E. MURPHY (admitted *Pro Hac Vice*)
SHIRA A. BARATZ (admitted *Pro Hac Vice*)
MELAND BUDWICK, P.A.

*Attorneys for Plaintiffs, Lance Miller and Seth Freeman as Trustees for the iCap Trust*

14

COMPLAINT

# EXHIBIT 1

| Transferee | Amount | Date | Transferor |
|---|---|---|---|
| Fuxu Liang | (666.66) | 3/8/2021 | iCap Investments, LLC |
| Fuxu Liang | (637.77) | 12/8/2020 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 1/7/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 2/5/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 4/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 5/5/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 6/8/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 7/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 8/9/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 9/9/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 10/6/2022 | iCap Investments, LLC |
| Fuxu Liang | (447.31) | 11/4/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 8/6/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 9/8/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 10/6/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 11/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 12/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 1/12/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 2/10/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 3/10/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 4/11/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 5/6/2022 | iCap Investments, LLC |
| Fuxu Liang | (70,000.00) | 5/20/2022 | iCap Investments, LLC |
| Fuxu Liang | 70,000.00 | 5/20/2022 | 725 Broadway, LLC |
| Fuxu Liang | (518.89) | 6/7/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 7/12/2022 | iCap Investments, LLC |
| Fuxu Liang | 1,500.00 | 10/3/2018 | iCap Vault I, LLC |
| Fuxu Liang | (52,622.60) | 11/6/2018 | iCap Equity, LLC |
| Fuxu Liang | 52,622.60 | 11/6/2018 | iCap Vault I, LLC |
| Fuxu Liang | (7,800.00) | 4/30/2019 | iCap Pacific Income Fund 4, LLC |
| Fuxu Liang | (9,998.05) | 8/9/2019 | iCap Pacific Income Fund 4, LLC |
| Fuxu Liang | 9,998.05 | 8/9/2019 | iCap Vault I, LLC |
| Fuxu Liang | (50,000.00) | 9/26/2019 | iCap Vault I, LLC |
| Fuxu Liang | 7,800.00 | 4/30/2019 | iCap Vault I, LLC |
| Fuxu Liang | (28,285.29) | 5/8/2019 | iCap Pacific Income Fund 4, LLC |
| Fuxu Liang | 28,285.29 | 5/8/2019 | iCap Vault I, LLC |
| Fuxu Liang | (233.33) | 11/5/2020 | iCap Investments, LLC |
| Fuxu Liang | 130,000.00 | 11/3/2020 | iCap Investments, LLC |
| Fuxu Liang | (50,000.00) | 5/14/2020 | iCap Vault I, LLC |
| Fuxu Liang | 70,000.00 | 5/13/2020 | iCap Investments, LLC |
| Fuxu Liang | (140.00) | 6/15/2020 | iCap Investments, LLC |
| Fuxu Liang | (233.33) | 7/13/2020 | iCap Investments, LLC |
| Fuxu Liang | (233.33) | 8/12/2020 | iCap Investments, LLC |
| Fuxu Liang | (233.33) | 9/2/2020 | iCap Investments, LLC |
| Fuxu Liang | (233.33) | 10/6/2020 | iCap Investments, LLC |
| Fuxu Liang | (130,000.00) | 11/3/2020 | iCap Vault I, LLC |
| **Fuxu Liang Total** | (44,477.16) | | |

**EXHIBIT 1**

25-80041-WLH    Doc 1    Filed 09/26/25    Entered 09/26/25 12:04:20    Pg 16 of 18

# EXHIBIT 2

25-80041-WLH   Doc 1   Filed 09/26/25   Entered 09/26/25 12:04:20   Pg 17 of 18

| Transferee | Amount | Date | Transferor |
|---|---|---|---|
| Fuxu Liang | (666.66) | 10/6/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 11/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 12/9/2021 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 1/12/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 2/10/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 3/10/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 4/11/2022 | iCap Investments, LLC |
| Fuxu Liang | (666.66) | 5/6/2022 | iCap Investments, LLC |
| Fuxu Liang | (70,000.00) | 5/20/2022 | iCap Investments, LLC |
| Fuxu Liang | 70,000.00 | 5/20/2022 | 725 Broadway, LLC |
| Fuxu Liang | (518.89) | 6/7/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 7/12/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 8/9/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 9/9/2022 | iCap Investments, LLC |
| Fuxu Liang | (433.33) | 10/6/2022 | iCap Investments, LLC |
| Fuxu Liang | (447.31) | 11/4/2022 | iCap Investments, LLC |
| **Fuxu Liang Total** | **(8,032.80)** | | |

**EXHIBIT 2**